## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

**JEWISH VOICE FOR PEACE, SOUTH FLORIDA**,

                        Plaintiff,

       v.

**CITY OF MIAMI BEACH; STEVEN MEINER**, individually and in his official capacity as Mayor of the City of Miami Beach, and **DAVID SUAREZ**, individually,

                    Defendants.

                                  JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff JEWISH VOICE FOR PEACE, SOUTH FLORIDA sues Defendants CITY OF MIAMI BEACH ("the City"), STEVEN MEINER, and DAVID SUAREZ for violation of its First Amendment rights and the First Amendment rights of its members, and alleges as follows:

## INTRODUCTION

1. For nearly two years, the City of Miami Beach and its highest officials, including the Mayor and its Commissioners, have used their power to suppress speech on one of the most important moral issues of our time, namely, Israel's assault on the Palestinian population and infrastructure of Gaza that began in October 2023.

-1-

2.      The death and destruction wrought by Israel's actions have prompted protests across the country and around the world. Members of the Plaintiff organization, JEWISH VOICE FOR PEACE, SOUTH FLORIDA, have joined those protests in South Florida, including in the City of Miami Beach.

3.      Because Israel's supporters have defended Israel's inhumane actions in Gaza in the name of the Jewish people, the members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA have been particularly compelled to proclaim publicly: "Not In Our Name."

4.      In the months since October 2023, the Mayor and the Miami Beach City Commission have become active supporters of Israel's campaign of relentless destruction in Gaza, a campaign that most international law experts and human rights organizations have labeled "genocide."  In addition to purchasing $10M worth of Israel bonds, the City has purchased an ambulance for Israel, sent a group of Miami Beach firefighters to Israel, and authorized a delegation of "the entire City Commission" to travel to Israel "to demonstrate the City's unwavering support and friendship for the Israeli people."

5.      At the same time, the Defendants have aggressively sought to silence critics of the Israeli onslaught in Gaza, first by adopting a resolution that prohibited the City from hiring contractors who refused to do business with Israel, then by publicly castigating Israel's critics for their views, and finally by passing an

unconstitutional anti-protest Ordinance explicitly designed to silence criticism of Israel. The City's police force has actively supported the Mayor and the Commission in their assault on the Plaintiff's First Amendment rights.

6.     On December 8, 2023, about 100 protesters, including members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA, gathered on the sidewalk in front of the Miami Beach Convention Center to protest Israel's actions in Gaza. The protesters, who held signs and displayed a banner saying "Let Palestine Live," positioned themselves in a line that left the sidewalk, which is almost 30-feet wide, open for pedestrians to pass by freely.

7.     In the days that followed, Defendant Meiner, complained angrily about the protest and called for an investigation about why it was permitted.

8.      On March 13, 2024, Defendant Meiner co-sponsored, and the City Commission unanimously passed, an Ordinance that authorizes the police to order any protester standing on a public sidewalk to move from the sidewalk.

9.     Comments made by Defendants Meiner and Suarez before, during, and after the meeting at which the Ordinance was passed made it clear that they vigorously oppose views that are critical of Israel and that the purpose of the Ordinance was to impair the expression of those views. The adoption of the Ordinance offends the most fundamental of First Amendment principles, namely,

that public officials may not "use the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Ass'n v. Vullo,* 602 U.S. 175, 188 (2024).

10.     Since enactment of the Ordinance, Miami Beach police officers have given effect to the City and the Mayor's hostility to Plaintiff's viewpoint by repeatedly and arbitrarily requiring that JEWISH VOICE FOR PEACE, SOUTH FLORIDA and its members move their protest activities from the public sidewalks where they have sought to protest to a site that impaired their ability to reach their intended audience.

11.     The actions of the Defendants, by denying Plaintiff JEWISH VOICE FOR PEACE, SOUTH FLORIDA and its members, the opportunity to convey their views to their intended audience, violate the First Amendment.

## **<u>JURISDICTION</u>**

12.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

13.     This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 and 65. The federal rights asserted by Plaintiff are enforceable under 42 U.S.C. § 1983. An award of attorney's fees and costs is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

14.   Plaintiff JEWISH VOICE FOR PEACE, SOUTH FLORIDA is the South Florida Chapter of A Jewish Voice for Peace, a national membership organization of 720,000 members that has worked for over 25 years to mobilize Jewish communities to advocate for a just society in Palestine and Israel rooted in human rights rather than oppression, "equality rather than supremacy, dignity rather than domination, democracy rather than dispossession. A society where every life is precious." A Jewish Voice for Peace, *Our Vision*, available at https://tinyurl.com/cemw6eb9. Jewish Voice for Peace has affiliated chapters across the country. Plaintiff JEWISH VOICE FOR PEACE, SOUTH FLORIDA's members in South Florida are members of the South Florida Chapter of Jewish Voice for Peace. Plaintiff sues on behalf of itself and on behalf of its members.

15.   Defendant City of Miami Beach ("the City") is a municipality organized and existing under the laws of the State of Florida and located in Miami-Dade County, Florida. Under Florida law, it has the power to sue or be sued. *See* Art. VIII, § 2(b), Fla. Const.; § 166.021, Fla. Stat.

16.   Defendant Steven Meiner is the Mayor of the City of Miami Beach. As such, he is the chief executive officer of the City. He is also a member of the Miami Beach City Commission, the legislative body of the City. He is sued in his official and in his individual capacities.

17.     Defendant David Suarez is a member of the Miami Beach City Commission. He is sued in his individual capacity.

## FACTS

### Art Basel Protest - December 8, 2023

18.     On December 8, 2023, members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA, alongside artists and Palestinian activists, gathered in front of Miami Beach's annual art show, Art Basel, to demonstrate their support for the Palestinian people and protest Israel's war against Gaza. Protestors stood on the 30-foot-wide sidewalk in front of the Miami Beach Convention Center. They did not block any of the entrances to the Convention Center nor did they obstruct pedestrian traffic on the sidewalk. *See Image 1 below.*



*Image 1*

19.     Some individuals held signs while others shared informational leaflets with attendees. Protesters displayed messages criticizing Israel's actions in Gaza and advocating for Palestinian rights. Others encouraged Miami-Dade County to "Divest from Death," in response to the County's $76 million investment in Israel Bonds at a time when Israel had already killed over 17,000 Palestinians.

20.     Protestors also displayed a nearly 60-foot-long banner reading, "Let Palestine Live." *See Image 2 below*. The banner was created by a group known as Miami Artists for Ceasefire.

21.     At the direction of the police, those people holding the banner, as well as those protesters holding signs, stood on the part of the sidewalk next to the roadway, leaving a large part of the sidewalk between them and the Convention Center free for the unobstructed passage of pedestrians.



*Image 2*

22.    The nearly 100 protesters came from many different faiths and backgrounds: Jewish, Muslim, Arab, Palestinian, and other members of the South Florida community.

23.    To close the protest, protestors observed a lengthy moment of silence after reading the names of children killed in Gaza.

24.    Miami Beach police watched the entire protest from the roadway but did not attempt to shut down the protest or redirect it to another location.

25.    At the same time as the JEWISH VOICE FOR PEACE, SOUTH FLORIDA's demonstration, nearly 120 airplane pilots gathered to protest at a different entrance to the Convention Center, demanding better pay and working conditions from their employer, NetJets.

26.    In the months following, the Mayor and Commissioners discussed taking action to curb future protests. However, neither the pilots, nor any other protest group, were mentioned during any of these discussions. Instead, the Mayor and the Commissioners focused their attention entirely on silencing Plaintiff's pro-Palestine protest and viewpoints.

### December 13, 2023 City Commission Meeting
### Mayor's Concern with Art Basel Protests in Support of Palestine

27.    At a City Commission meeting five days later, on December 13, 2023, Defendant Mayor Meiner sponsored an item to "discuss/take action concerning demonstrations directly in front of the convention center during Art Basel." *See*

Commission Memorandum, Dec. 13, 2023 Item R9 Y. See attached, Exhibit 1. The item made specific reference to the "pro-Palestinian/anti-Israel" protest, and took particular exception to the chant, "From the river to the sea, Palestine will be free."[1] *Id.*

28.     At this same meeting, an addendum to the Mayor's item was handed out to the Commissioners. *See* City of Miami Beach City Commission Meeting Agenda (Dec. 13, 2023) at 134. *See Image 3 below*. The addendum also recommended action against "an anti-Israel demonstration."



R9 Y   DISCUSS/TAKE ACTION CONCERNING DEMONSTRATIONS DIRECTLY IN FRONT OF THE CONVENTION CENTER DURING ART BASEL, INCLUDING AN ANTI-ISRAEL DEMONSTRATION, AND SETTING PARAMETERS FOR REASONABLE TIME, PLACE, AND MANNER RESTRICTIONS FOR PROTESTS, INCLUDING DISCUSSION OF INCITEMENT TO VIOLENCE VS. FREE SPEECH.

Mayor Steven Meiner
Addendum added on 12/13/2023
Handout on the Dais

**ACTION:** The Item was not reached. **Lilia Cardillo to place on the January 31, 2024 Commission Meeting agenda.**

*Image 3*

29.     The item was not reached at the December meeting. *Id.* Although tabled, it would be the first in a series of actions taken by the Mayor to curb both criticism of Israel and pro-Palestinian protests. Eventually, the Commission would

---

[1]     While this phrase has been the subject of much debate, its meaning has been explained by the only Palestinian member of the US Congress as "an aspirational call for freedom, human rights, and peaceful coexistence, not death, destruction, or hate." *See* Rep. Rashida Tlaib, X (Nov. 3, 2023), https://perma.cc/4578-WEPD.

pass an anti-Protest Resolution and an Ordinance, discussed below, both designed to be used against pro-Palestinian speech. *See* ¶¶ 37-65, *below.*

### City Prevents Protesters from Assembling in front of Convention Center at the Aspen Ideas Climate Conference on March 11, 2024

30.     On March 11, 2024, about 20 members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA gathered in an attempt to protest outside the Miami Beach Convention Center. The protesters sought to hand flyers to attendees of the Aspen Ideas Climate Conference, bringing attention to Israel's ongoing destruction in Gaza and, in particular, its impact on climate-related issues in Gaza.

31.     However, Miami Beach police prevented the protesters from approaching the Convention Center or the conference attendees, citing the existence of a "Security Zone" around the conference. Police redirected protesters to a "Free Speech Zone" nearly 200 yards away from the conference entrance.

32.     From the "Free Speech Zone," protesters were unable to hand flyers to conference attendees, nor were attendees able to read protesters' signs, take their flyers, or hear their chants.

33.     On information and belief, the police order that prevented JEWISH VOICE FOR PEACE, SOUTH FLORIDA members from standing in front of the Convention Center was not given because of a "significant governmental interest," but rather was given because of Defendants' hostility to Plaintiff's views.

34.     At the first City Commission Meeting following the Climate Conference, a member of JEWISH VOICE FOR PEACE, SOUTH FLORIDA complained that the Mayor tried to "put us in a place where we couldn't be seen or heard this past weekend at the climate justice gathering when we were sharing educational materials." *See* City of Miami Beach City Commission Meeting, Video Recording, (Mar. 13, 2024), *YouTube*, https://www.youtube.com/live/EYqDf361_XU?t=408s at 6:49.

35.     The Mayor responded: "[T]o the extent that you mention it, I'm actually proud of it." *Id.* at 7:12. The Mayor later added that part of the reason he ordered the police to move the climate protesters was because "certainly [he] did not want the images that we've seen on other occasions," *id.* at 3:05:57, seemingly referencing photographs of the Let Palestine Live banner at Art Basel (*see Image 4 below*), that made national news following the December 8, 2023 protest.



Image 4

36.    The Mayor re-affirmed his intention to silence Plaintiff's viewpoint, pledging not to allow criticism of Israel or "accusations against the Israeli government." *Id.* at 4:29.

**March 13, 2024 City Commission Meeting**
**Sidewalk Obstruction Ordinance, Anti-Protest Resolution,**
**and the Mayor Silences his Critics**

37.    Two days after the Climate Conference, at the March 13, 2024, City Commission Meeting, the Commission considered two items to further restrict JEWISH VOICE FOR PEACE, SOUTH FLORIDA's ability to peacefully protest. *See* Commission Memorandum, Mar. 13, 2024, items R5 H and R7 I, *available at* https://tinyurl.com/44er7rx5. Attached as Exhibits 2 (composite) and 3 (composite) respectively.

-12-

38.     Both items were either sponsored or co-sponsored by the Mayor and Commissioner Suarez.

39.     These items, proposing one resolution and one ordinance, were introduced to target viewpoints that the Mayor and Commissioner Suarez disagree with, namely, criticism of Israel. This intent is shown by the items' specific language, the legislative drafting history, and the officials' comments and actions during public hearing.

### *The Sidewalk Obstruction Ordinance*

40.     Item R5 H proposed an Ordinance creating a new offense entitled "Obstructing of Sidewalks and Streets Prohibited." City of Miami Beach City Commission Meeting Agenda, Mar. 13, 2024, Item R5 H, *available at* https://tinyurl.com/473xv7xx [hereinafter the "Ordinance"].

41.     The Ordinance, now codified at Section 70-46 of the Miami Beach Code, criminalizes:

> Any person who, … stands… in such manner as to intentionally block or impair passage or movement by another person … or to require another person … to take other evasive action to avoid physical contact, and who, after being ordered by a law enforcement officer to move … and such person … remains in or on any public sidewalk, … in such a manner as to block or impair passage or movement by another person …or to require another person … to detour or take other evasive action to avoid physical contact, shall be guilty, pursuant to this

> section, of the offense of obstructing of pedestrian and
> vehicular traffic.

Miami Beach, Fla., Code § 70-46 - *Obstructing of pedestrian and vehicular traffic prohibited* (2024). Attached as Exhibit 4.

42.     The Ordinance is unconstitutionally overbroad. Because protesters standing on a sidewalk inevitably "block or impair" movement by another person, the Ordinance gives the police "unbridled discretion" to move protesters from places they have a right to be. *Jarrard v. Sheriff of Polk County*, 115 F.4th 1306, 1321 (11th Cir. 2024). A law that "a person may stand on a public sidewalk…only at the whim of [a] police officer" is flatly unconstitutional. *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90-91 (1965).

43.     The Ordinance is not saved by the fact that police may not order protesters to move unless there is a nearby "adequate and available alternative forum." A person's right to use public sidewalks for such purposes may not be "abridged on the plea that it may be exercised in some other place." *Schneider v State,* 308, U.S. 147, 163 (1939).

44.     Nor is the Ordinance saved under "time, place and manner" principles. The Ordinance does not require that the police first determine that the sidewalk is obstructed or that the order is justified by some other "significant governmental interest…" *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 293

(1984). Moreover, the Ordinance does not require the police to determine the existence of such an interest before requiring protesters to move from the sidewalk.

45.     Additionally, the Ordinance is unconstitutionally vague. As noted in *Miami For Peace, Inc. v. Miami-Dade Cnty.*, No. 07-21088-CIV, 2008 WL 3163383, at *11 (S.D. Fla. June 4, 2008):

> [T]he phrase 'hinder or impede,' criminalizes an extremely broad variety of activities on a public right of way, including simply standing on a sidewalk, and criminalizes virtually all behavior likely to take place at a public demonstration. This broad language makes it exceedingly hard to discern exactly what conduct is prohibited… *See Ciccarelli v. City of Key West*, 321 So.2d 472, 474 (Fla. 3d DCA 1975).

### *Mayor's Anti-Protest Resolution*

46.     On March 13, 2024, the City Commission also considered a Resolution, sponsored by the Mayor, encouraging, among other things, "restrictions" of "future protests and demonstrations to the fullest extent permitted by law." *See* City of Miami Beach City Commission Meeting Agenda, Mar. 13, 2024, Item R7 I, *available at* https://tinyurl.com/ynkbyp54 [hereinafter "Anti-Protest Resolution"]. Attached as Exhibit 3 (*supra*).

47.     The original draft of the Mayor's Anti-Protest Resolution expressed a preference for a particular viewpoint, by:

    a. Condemning specific "words, expressions, and phrases" that are used by those advocating for Palestinian rights, including "From the River to the Sea [Palestine will be Free]."

    b. Calling for "reaffirming the City's unwavering support for the State of Israel," and

    c. Highlighting various "symbolic gesture[s] of support" for Israel. These include directing the City to purchase Israel bonds, which can be used to fund the Israeli military, and expressing the City's support for sending "munitions… [and] combat aircraft" to support Israel's offensive in Gaza.

A copy of this original draft is attached as Exhibit 5.

48. While much of this viewpoint-specific language was removed from the final Resolution presented on March 13, the Resolution retained a specific expression of support for Israel, affirming that the City recognizes the importance of "supporting nations that share [the City's] values, including the State of Israel."

49. Although it created no new crime, the Resolution invokes the threat of the new Ordinance as an enforcement mechanism.

### *The Mayor's and Commissioner Suarez's Hostility to Criticism of Israel*

50. In addition to the discriminatory intent evinced by this legislative history, the Mayor and Commissioner Suarez made clear at the March 13 meeting that the Resolution and accompanying Ordinance were intended to be employed against critics of Israel and supporters of Palestine.

51.     Every meeting of the City Commission is preceded by the so-called "Sutnick hour," a 30-minute period during which members of the public are permitted to speak about any matters that concern them.

52.     During the public comment period of City Commission meetings, the Mayor routinely interrupted speakers who said things about Israel with which he disagreed. He ordered the Clerk to silence the microphones of such speakers, he said that he would not allow criticism of Israel, and he made the nonsensical claim that, because the Commission was a "non-partisan" body, criticism of Israel was not permissible, despite the Mayor's repeated references to Israel in Commission agenda items.

53.     At that March 13 meeting, the Mayor interrupted three Miami Beach residents with whom he disagreed and who criticized his Anti-Protest Resolution. *See* City of Miami Beach City Commission Meeting, Video Recording, (Mar. 13, 2024), *YouTube*, https://www.youtube.com/watch?v=EYqDf361_XU.

     a.  The Mayor interrupted Ken Barnes, who said that as a Jewish person, he was horrified by the actions of the Israeli government in Gaza and that he was part of the protest calling for a ceasefire and an end to the unfolding genocide. *Id.* at 3:50.

     b.  The Mayor also interrupted Donna Nevel who said that she wished there were more protests against Nazi Germany when her people, the Jewish people, were being slaughtered by the Nazis. *Id.* at 6:09.

    c. And, the Mayor interrupted Alan Levine who expressed horror that Israel was using starvation as a weapon. *Id.* at 12:15.

54. Each of these speakers is a member of JEWISH VOICE FOR PEACE, SOUTH FLORIDA. For two of these speakers, Ms. Nevel and Mr. Levine, the Mayor ordered the Clerk to cut off the microphone during the speakers' allotted time. The Clerk obliged the Mayor's orders both times. *Id.* at 8:40 and 13:16.

55. During these interruptions, the Mayor specifically disallowed criticism of Israel:

    a. Cutting off Mr. Barnes, the Mayor proclaimed, "I'm not going to sit here and allow you to make accusations against the Israeli government, anti-semitic, in my opinion. And anti-Israel. I'm not going to allow it in this meeting." *Id.* at 4:19.

    b. Similarly, in response to Mr. Levine commenting on Israel's actions in Gaza, the Mayor said he "will not allow [the speaker] to debase and lie about the Israeli government." *Id.* at 12:35.

56. Commissioner Suarez "wholeheartedly agreed" with the Mayor that he would not allow criticism of Israel. *Id.* at 4:41.

57. In attempts to justify his interruptions, the Mayor repeatedly claimed that the Commission is "non-partisan." *Id.* at 4:19 and 13:11.

58. While true in the sense that Commissioners are elected without regard to political party, it is obvious, both as a matter of common sense as well as from the

Mayor's mention of Israel in his own legislative proposals, that "non-partisan" is not intended to bar the expression of political positions.

59.     During discussion of the Resolution, the Mayor again expressed his intention to shutter criticism of Israel. He asked, rhetorically, "Why are we allowing these protests to happen in front of our signature event [Art Basel]. In front of our signature tourism [site], the Convention Center?" *Id.* at 3:20:00.

60.     Similarly, Commissioner Suarez noted that he did not "agree" with the location of the "pro-Palestinian protest in front of Art Basel." *Id.* at 3:13:15.

61.     Neither official mentioned the protesting pilots from Art Basel 2023 nor any other subject matter of protest or political activity.

62.     Before voting on the Anti-Protest Resolution, the Mayor explained that he proposed the item because he "has not been happy with the way things have gone on these anti-Israel protests." *Id.* at 3:20:40.

63.     Commissioner Saurez also confirmed, on his official "David Suarez Miami Beach City Commissioner Group 5" Facebook page, that the Anti-Protest resolution was passed in response "to several pro-Palestinian demonstrations in the city in recent months." *See* David Suarez Miami Beach City Commissioner Group 5, Facebook, (May 6, 2024) (*Image 5 below*).



**David Suarez Miami Beach City Commissioner Group 5's Post**

By unanimous votes, the current Miami Beach mayor and city commissioners have recently taken stances to keep our city and its residents safe. In March, the commission supported a resolution by Mayor Meiner for the city to set "parameters for reasonable time, place and manner restrictions" for protests, pointing to several pro-Palestinian demonstrations in the city in recent months.

*Image 5*

64.    The Anti-Protest Resolution and the cross-referenced Sidewalk Ordinance passed the Commission 7-0 as Resolution No. 2024-32971 and Ordinance No. 2024-4604. Attached Exhibits 6 and 7 respectively.

65.    Both were quickly weaponized against their intended targets.

### April 3, 2024 - City Commission Meeting:
### Enforcing the Anti-Protest Resolution and Ordinance by Unlawfully Ordering Protesters Away from Commission Meeting Entrance

66.     By the next Commission Meeting, on April 3, 2024, the City's Police were already enforcing the Anti-Protest Resolution and Ordinance against those demonstrating in support of Palestinian rights and in critique of Israel.

67.    At around 8:00 am, a small group of fewer than ten JEWISH VOICE FOR PEACE, SOUTH FLORIDA members gathered outside the Convention Center, where Commission meetings were being held during construction at City Hall.

68.    The sidewalk in this area, the same location as the Art Basel 2023 protest, is roughly 30 feet wide. The only people using the sidewalk were attendees

of the meeting, which, over the course of a half hour, accounted for no more than a few dozen passersby.

69.     The protesters held small signs expressing support for Palestine and criticizing Israel's government. They also carried leaflets to hand to attendees.

70.     The protestors did not block the sidewalk or impede traffic in any way, as seen in the screenshot below from a journalist's video. (*Image 6*).



*Image 6*

71.     Nonetheless, the police ordered the protesters to move, alleging that they were blocking the doorways and the sidewalk. In order to avoid arrest, the protesters reluctantly complied, thus rendering them unable to leaflet attendees. *See*

Martin       Vassolo       (@martindvassolo),       X,       (Apr.       3,       2024),
*https://x.com/martindvassolo/status/1775501023362080791*.

72.    Upon information and belief, the decision of  Miami Beach police officials to prohibit the protest in front of the Convention Center was made in response to the expressed or implied wishes of the Mayor and Commissioner Suarez.

**Second Art Basel Protest - December 7, 2024**

73.    In December 2024, Art Basel again returned to Miami Beach and the Convention Center.

74.    Members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA again planned to peacefully demonstrate in front of the Convention Center, on December 7, 2024, the same place as the 2023 Art Basel Protest. Demonstrators intended to unfurl the same Let Palestine Live banner that had been displayed without incident at the prior year's art show.

75.    Protesters also planned to hold signs, distribute leaflets, and collect signatures for a "Boycott Art Basel" petition, educating attendees about the City's investment in Israel Bonds and Israel's military violence. Notice of the demonstration was posted publicly on social media and shared widely.

76.    When the first protesters arrived at the Convention Center they were met by Miami Beach Police. The officers ordered the protesters not to engage in any political activity while on the public sidewalk outside of the Convention Center and

said that anyone holding a sign or attempting to unfurl a banner on that sidewalk would be immediately arrested.

77.    Officers claimed that the sidewalk surrounding the Convention Center was a "Security Zone" and that the sidewalk was off limits to anyone without a valid Art Basel ticket. However, it appeared that the sidewalk abutting the Convention Center was open to all members of the public, so long as they were not displaying a message critical of Israel or supporting Palestinian rights.

78.    The police did not appear to check the tickets of any of the hundreds of people passing by the Convention Center.

79.    Since there was light pedestrian traffic on the sidewalk, protesters would have been able to stand or even walk along the area in front of the Convention Center without interfering with pedestrian traffic or blocking the entrance to Art Basel, just as they had done in 2023.

80.    When asked for justification for the declared "Security Zone," police officers showed Plaintiff's police liaison the cover sheet of an official police "Special Action Event Plan" entitled "'Let Palestine Live' Art Basel Protest," reproduced below (*Image 7*).



*Image 7*

However, the officers would not disclose the Action Plan's contents.

81.     The very title of the Event Plan is compelling evidence that the so-called Security Zone had nothing to do with a "significant governmental interest" and everything to do with moving a pro-Palestine protest to a site where it would not be seen by those going in and out of the Convention Center.

82.     Upon information and belief, the decision of the Miami Beach police officers to prohibit the protest in front of the Convention Center was made because of Defendants' hostility to the views being expressed by Plaintiff's members.

83.     Under threat of arrest, police forced protesters to move to the south side of City Hall, on 17th Street, around the corner from the Convention Center.

84.     At this location, attendees of Art Basel at the Convention Center were unable to see the protesters and protesters were unable to speak with attendees, hand them flyers, or ask for signatures on their petition.

85.     The actions of the police were taken pursuant to a custom and policy of the Defendants that permitted police to order protesters to move from places where they had a right to be even though the order was not supported by a significant government interest.

86.     The actions of Defendants have impaired the right afforded by the First Amendment to JEWISH VOICE FOR PEACE, SOUTH FLORIDA and its members to convey publicly their views on matters of public concern.

87.     JEWISH VOICE FOR PEACE, SOUTH FLORIDA and its members wish to continue protesting Israel's actions and policies in public places in Miami Beach, including in front of the Convention Center, and fear that Defendants will require them to move from the places they choose to protest.

## FIRST CAUSE OF ACTION

### First Amendment Violation: The Ordinance Is Invalid On Its Face Because Its Overbroad Terms Permit The Police to Move Protesters From Places They Have A Right to Be

88.     Public sidewalks "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939).

89.     While public officials may limit the "time, place, and manner" of protest activities in public places, they may do so only to "serve a significant governmental interest…" *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). Since the Ordinance does not require the police to determine that there exists an interest that is sufficiently significant to warrant imposing such a limitation before requiring protesters to move from the sidewalk, the Ordinance grants the police authority in violation of the First Amendment.

## SECOND CAUSE OF ACTION

### First Amendment Violation: The Ordinance Is Invalid On Its Face Because Its Vague Terms Permit Arbitrary and Discriminatory Enforcement

90.     The City's Ordinance, which empowers a police officer to determine when a person standing on a sidewalk "intentionally block[s] or impair[s] passage or movement by another person," is unconstitutionally vague. It is a law that

"[entrusts] lawmaking to the moment-to-moment judgment of the policeman on his beat," *Kolender v. Lawson*, 461 U.S. 352, 360 (1983), and encourages "discriminatory enforcement." *Miami for Peace, Inc. v. Miami-Dade County*, 2008 U.S. Dist. LEXIS 61912, *29 (S.D.Fla., June 4, 2008).

## THIRD CAUSE OF ACTION

### First Amendment Violation: The Miami Beach Police Have Limited Plaintiff's Right to Protest By Ordering That They Move From Public Places At Which They Have a Right to Be

91 . The members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA have a right to protest not just on *any* public sidewalk in Miami Beach, but they have a right to stand on those sidewalks where they are able to convey their message to their intended audience. When they seek to protest at events held at the Convention Center, it is in recognition of the fact that "one-on-one communication" is "the most effective, fundamental, and perhaps economical avenue of political discourse." *Meyer* v. *Grant*, 486 U.S. 414, 424 (1988).  Defendants violated Plaintiff's First Amendment rights when Miami Beach police officers denied Plaintiff's' members access to the Convention Center's sidewalks because they were prevented "from communicating a message from a normal conversational distance or handing leaflets to people entering or leaving  the [Center] who are walking on the public sidewalks." *Schenck v. Pro-Choice Network of Western N. Y.*, 519 U.S. 357, 377 (1997).

## FOURTH  CAUSE OF ACTION

### First Amendment Violation: The Ordinance Has Been Enforced Against Plaintiff Because of Defendants' Hostility to Plaintiff's Views About Israel

92.      In *Texas v. Johnson*, 491 U.S. 397 (1989), the Supreme Court held that "if there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea because society finds the idea itself offensive or disagreeable." The comments of Defendant Meiner and Defendant Suarez before and after passage of the Ordinance demonstrate unequivocal hostility towards the ideas expressed by members of JEWISH VOICE FOR PEACE, SOUTH FLORIDA. The Ordinance itself, and the actions of Miami Beach police officers  in enforcing it, are a product of that hostility.

### RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Enter a judgment declaring that the Ordinance is, on its face and as applied to Plaintiff, unconstitutional.

2.  Issue a permanent injunction prohibiting Defendants from interfering with Plaintiff's right to peacefully protest on public sidewalks in the City.

3.  Award against all Defendants compensatory damages, and, against Defendants Meiner and Suarez, punitive damages.

4.  Award costs and attorney's fees pursuant to 42 U.S.C. § 1988.

5.  Grant or award such other relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands trial by jury on all issues so triable.


Date: September 10, 2025

Respectfully submitted,


**ALAN LEVINE***
New York Bar No. 1373554
910 Bay Dr, Suite 33
Miami Beach, FL 33141
Tel. No: 917.806-1814
Email: levine1955@gmail.com
*\* Pro hac vice motion to be filed*

**BINA AHMAD***
[S.B. #329387]
**HADSELL STORMER RENICK & DAI
LLP**
128 N. Fair Oaks Ave.
Pasadena, CA 91103
PH: 626.585.9600
bahmad@hadsellstormer.com
*\*Pro hac vice motion to be filed*

**JAMES A. ODELL**
FL Bar No.: 101396
100 NW 6th Street, Unit 3905
PH: 239.216.3372
James.aaron.odell@gmail.com

*/s/ Tara A. Campion*
**BRUCE S. ROGOW**
FL. Bar No.: 067999
**TARA A. CAMPION**
FL. Bar No.: 90944
**BRUCE S. ROGOW, P.A.**
1199 S. Federal Hwy., #212
Boca Raton, FL 33432
PH: 954.767.8909
tcampion@rogowlaw.com
brogow@rogowlaw.com


**KATHERINE L. GIANNAMORE**
Florida Bar No.  0092397
**JALAL "JAY" SHEHADEH**
Florida Bar No.  0070617
**SHEHADEH GIANNAMORE, PLLC**
620 S. Le Jeune Road
Coral Gables, Florida 33134
Phone: (305) 507-9843
Fax: (305) 675-0204
katherine@sglawfl.com
jay@sglawfl.com

# INDEX TO EXHIBITS

| | |
|---|---|
| 1 | December 13, 2023 Commission Memorandum |
| 2 Composite | March 13, 2024 Commission Memorandum and Proposed Ordinance |
| 3 Composite | March 13, 2024 Commission Memorandum with Proposed Resolution ["Anti-Protest Resolution"] |
| 4 | [Proposed Ordinance as codified] Miami Beach, Fla., Code § 70-46 - *Obstructing of pedestrian and vehicular traffic prohibited* (2024) |
| 5 | Original draft of the Mayor's Anti-Protest Resolution |
| 6 | Resolution No. 2024-32971 as passed and adopted by Commission |
| 7 | Ordinance No. 2024-4604 as passed and adopted by Commission |