**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-24126-RAR**

**JEWISH VOICE FOR PEACE,**
**SOUTH FLORIDA**,

      Plaintiff,

v.

**CITY OF MIAMI BEACH**, *et al.*,

      Defendants.

_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendants' Joint Motion to Dismiss Complaint ("Motion"), [ECF No. 30], filed on October 16, 2025.  On October 30, 2025, Plaintiff filed a Response in Opposition ("Response"), [ECF No. 37], to which Plaintiff replied on November 26, 2025 ("Reply"), [ECF No. 68].  For the following reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion is **GRANTED IN PART**.

## BACKGROUND

Plaintiff Jewish Voice for Peace, South Florida ("JVP") is the South Florida Chapter of a national organization that "mobilize[s] Jewish communities to advocate for a just society in Palestine and Israel rooted in human rights rather than oppression[.]"  Complaint ("Compl."), [ECF No.1] ¶ 14.  Defendant City of Miami Beach ("the City") "is a municipality organized and existing under the laws of the State of Florida and located in Miami-Dade County, Florida."  Compl. ¶ 15.  Defendant Steven Meiner ("Mayor Meiner") is the Mayor of the City.  Compl. ¶ 16.  Both Mayor Meiner and Defendant David Suarez ("Commissioner Suarez") are members of the Miami Beach City Commission, "the legislative body of the City."  Compl. ¶¶ 16–17.

Plaintiff alleges that "[o]ver the past two years, members of Plaintiff [JVP] have repeatedly spoken out—in public protests and at City Commission meetings—against Israel's [actions,]" Resp. at 1, but that "Defendants have aggressively sought to silence critics of Israel[.]" Compl. ¶ 5. Specifically, Plaintiff alleges that Defendants have suppressed their speech in two primary ways: (1) "by repeatedly and arbitrarily requiring that [JVP] and its members move their protest activities from the public sidewalks where they have sought to protest to a site that impaired their ability to reach their intended audience"; and (2) by enacting "an Ordinance that authorizes the police to order any protester standing on a public sidewalk to move from the sidewalk." Compl. ¶¶ 8, 10.

Since 2023, JVP has protested at Art Basel, Miami Beach's annual art show, and at other high-profile events in Miami Beach. Compl. ¶ 18. On December 8, 2023 at Art Basel, about 100 protestors, including JVP members, "gathered on the sidewalk in front of the Miami Beach Convention Center to protest Israel's actions in Gaza." Compl. ¶ 6. The protestors "held signs[,] [] shared informational leaflets with attendees[,] [and] displayed messages criticizing Israel's actions in Gaza and advocating for Palestinian rights." Compl. ¶ 19. They also "displayed a nearly 60-foot-long banner reading, 'Let Palestine Live.'" Compl. ¶ 20. Plaintiff maintains that they neither blocked the entrances to the Convention Center nor obstructed sidewalk pedestrian traffic. Compl. ¶¶ 18, 21.

Following the protest, on December 13, 2023, Mayor Meiner sponsored an item at a City Commission meeting to "discuss/take action concerning demonstrations directly in front of the convention center during Art Basel." Compl. ¶ 27 (quoting Commission Memorandum, Ex. 1, [ECF No. 1-1]. In that item, Mayor Meiner specifically made reference to the JVP protest, noting that the "group repeatedly chanted the phrase 'From the river to the sea, Palestine will be free[,]' [a] phrase widely interpreted to call for genocide against the Jewish People." Compl. ¶ 27;

Commission Memorandum, Ex. 1, [ECF No. 1-1].[1]  Ultimately, "[t]he item was not reached at [that] December [City Commission] meeting."  Compl. ¶ 29.

Thereafter, on March 11, 2024, twenty JVP members attempted to protest outside the Miami Beach Convention Center at the Aspen Ideas Climate Conference, but were prevented from doing so by the Miami Beach police who instead "redirected [them] to a 'Free Speech Zone' nearly 200 yards away from the conference entrance" where they "were unable to hand flyers to conference attendees, [and] attendees [were un]able to read protesters' signs, take their flyers, or hear their chants."  Compl. ¶¶ 30–32.  When a JVP member lamented the protestors' placement at a City Commission Meeting following the Climate Conference, Mayor Meiner responded that "'I'm actually proud of it' . . . later add[ing] that part of the reason he ordered the police to move the climate protesters was because 'certainly [he] did not want the images that we've seen on other occasions,' seemingly referencing photographs of the Let Palestine Live banner at Art Basel[.]"  Compl. ¶¶ 34–35 (internal citations omitted).

Two days later, on March 13, 2024, the City Commission considered two items that were either sponsored or co-sponsored by Mayor Meiner and Commissioner Suarez, and that were, according to Plaintiff, "introduced to target viewpoints that the Mayor and Commissioner Suarez disagree with, namely, criticism of Israel."  Compl. ¶¶ 37–39.

*First*, Ordinance No. 2024-4604, entitled "Obstructing of Pedestrian and Vehicular Traffic Prohibited" (hereinafter "Ordinance") was passed and adopted on March 13, 2024, to take effect on March 23, 2024.  Ordinance, [ECF No. 1-7] at 2–3.  Acknowledging that "sidewalks, streets, alleys, beach walks, and beach entrances play a vital role in city life as conduits for pedestrian

---

[1]  Plaintiff disagrees with Defendants' characterization of this phrase, noting that it is instead "an aspirational call for freedom, human rights, and peaceful coexistence, not death, destruction, or hate."  Compl. ¶ 27 n.1.

movement and access[,] . . . [and as] a fundamental and necessary foundation for cities" and that "when an individual's path is blocked . . . it can force them onto the street or other dangerous terrain where there is a risk of death or injury", the Ordinance was enacted to "provide citizens and visitors the right to move freely and safely through the city." *Id*. at 1.

The Ordinance prohibits the following conduct:

> (a)      Any person who, walks, stands, sits, lies, or places an object in such manner as to intentionally block or impair passage or movement by another person or by a vehicle, or to require another person or a vehicle to detour or to take other evasive action to avoid physical contact, and who, after being ordered by a law enforcement officer to move or to move the object, and such person or such object remains in or on any public sidewalk, street, alley, beach walk, or beach entrance in such a manner as to block or impair passage or movement by another person or by a vehicle, or to require another person or a vehicle to detour or take other evasive action to avoid physical contact, shall be guilty, pursuant to this Section, of the offense of Obstructing of Pedestrian and Vehicular Traffic.

*Id*. at 2.  The Ordinance includes a carve out for "protected activities" which it defines as "[a]cts authorized as an exercise of one's First Amendment right to demonstrate, picket or to legally protest[.]" *Id*.  Under the Ordinance, these acts, "shall not constitute Obstructing of Pedestrian and Vehicular Traffic unless a nearby adequate and available alternative forum is offered and provided, to which the subject or subjects refuse to move." *Id*.  "Permitted [a]ctivities", which are defined as "[a]cts authorized by a permit duly issued by a lawful authority", are likewise not deemed to be a violation of the Ordinance.  *Id*.

*Second*, the Mayor and City Commission adopted Resolution No. 2024-32971 ("Resolution"), [ECF No. 1-6], which "direct[ed] the City Administration to implement in advance and enforce time, place, and manner restrictions in order to regulate and control future protests and demonstrations to the fullest extent permitted by law, with the aim of ensuring public safety and protecting City residents, preventing disturbances, and preserving the rights of all[.]"  Resolution at 1–2.  It also "direct[ed] the Miami Beach Police Department to notify the Mayor and City

Commission of protests of any size taking place in the city within one (1) hour of obtaining that information to establish a reasonable basis to believe that a protest will occur." *Id*. at 2. Plaintiff alleges that the Resolution was intended to "encouarg[e] . . . 'restrictions of 'future protests and demonstrations to the fullest extent permitted by law.'" Compl. ¶ 46 (quoting Commission Memorandum, [ECF No. 1-3]). And though it "created no new crime, [it] invokes the threat of the new Ordinance as an enforcement mechanism." Compl. ¶ 49.

The Resolution also "recognizes the importance of fostering strong and peaceful international relations by supporting nations that share these values, including the State of Israel." *See* Resolution at 1; Compl. ¶ 48. Plaintiff points to the original draft of the Resolution which included more significant "viewpoint-specific language." Compl. ¶¶ 47–48. For example, the draft resolution, in the face of "unprovoked attacks by the terrorist organization Hamas . . . reaffirm[ed the City's] unwavering support for Israel and its people[.]" Draft Resolution, [ECF No. 1-5] at 1. It further "directed the City Administration to consider purchasing state of Israel bonds . . . as a symbolic gesture of support for the people of Israel" and "condemn[ed] any words, expressions, phrases, or sayings that mean, imply, or could be interpreted as referencing or promoting genocide, particularly phrases like 'From the River to the Sea'". *Id*. at 2.

In addition to the "discriminatory intent evinced by this legislative history", Plaintiff highlights statements made, and actions taken by Mayor Meiner and Commissioner Suarez at the March 13, 2024 meeting indicating that the Resolution and Ordinance "were intended to be employed against critics of Israel and supporters of Palestine." Compl. ¶ 50. Specifically, Plaintiff alleges that Mayor Meiner interrupted and ordered the Clerk to cut off the microphone of JVP members who made statements about Israel which he disagreed with, *see* Compl. ¶¶ 52–53; that Mayor Meiner disallowed criticism of Israel and that Commissioner Suarez "wholeheartedly

agreed" with Mayor Meiner's position, *see* Compl. ¶¶ 55–56; that Mayor Meiner "explained that he proposed the [Resolution] because he has not been happy with the way things have gone on these anti-Israel protests" *see* Compl. ¶ 62 (internal quotations omitted); and that Commissioner Suarez confirmed on his official Facebook page that the [Resolution] was passed in response "to several pro-Palestinian demonstrations in the city in recent months." *See* Compl. ¶ 63 (internal quotations omitted).

On April 3, 2024, at the next City Commission meeting, held at the Miami Beach Convention Center, fewer than ten JVP members gathered outside to protest. Compl. ¶¶ 66–67. While they did not block the sidewalk or impede traffic, they were ordered to move by the police. Compl. ¶¶ 70–71. Plaintiff alleges that "[u]pon information and belief" the prohibition on their protest "was made in response to the expressed or implied wishes of [] Mayor Meiner and Commissioner Suarez." Compl. ¶ 72. Though the protestors "reluctantly complied" to avoid arrest, they were "render[ed] unable to leaflet attendees." Compl. ¶ 71.

On December 7, 2024, JVP once again sought to demonstrate, as it had in 2023, on the sidewalk in front of the Convention Center at Art Basel. Compl. ¶¶ 73–75. However, when the protestors arrived at the Convention Center, they were ordered "not to engage in any political activity while on the public sidewalk" and informed that "anyone holding a sign or attempting to unfurl a banner on that sidewalk would be immediately arrested." Compl. ¶ 77. And when protestors "asked for justification for the 'Security Zone,' officers showed Plaintiff's police liaison the cover sheet of an official police 'Special Action Event Plan' entitled 'Let Palestine Live' Art Basel Protest[.]" Compl. ¶ 80. Police then "forced protestors to move to the south side of City Hall, on 17th Street, around the corner from the Convention Center [where] attendees of Art Basel at the Convention Center were unable to see the protesters and protesters were unable to speak with attendees, hand them flyers, or ask for signatures on their petition." Compl. ¶¶ 83–84.

On September 10, 2025, Plaintiff brought the instant Complaint, seeking to "continue protesting Israel's actions and policies in public places in Miami Beach, including in front of the Convention Center, and [out of] fear that Defendants will require them to move from the places they choose to protest." Compl. ¶ 87. Plaintiff's Complaint includes four causes of action, alleging (1) that the Ordinance is invalid on its face because its overbroad terms permit the police to move protesters from places they have a right to be; (2) that the Ordinance is invalid on its face because its vague terms permit arbitrary and discriminatory enforcement; (3) that the Miami Beach Police have improperly limited Plaintiff's right to protest by ordering that they move from public places at which they have a right to be; and (4) that the Ordinance has been enforced against Plaintiff because of Defendants' hostility to Plaintiff's views about Israel. *See* Compl. ¶¶ 88–92. On this basis, they request that the Court declare the Ordinance unconstitutional; issue a permanent injunction prohibiting Defendants from interfering with Plaintiff's right to peacefully protest on public sidewalks in the City; and award Plaintiff compensatory and punitive damages. *See* Compl., Relief.

In furtherance of its right to protest, on November 7, 2025, Plaintiff filed an Expedited Motion for Preliminary Injunction "to secure its First Amendment right to protest peacefully on the public sidewalk outside the Miami Beach Convention Center during 2025 Art Basel[.]" Mot. for Prelim. Inj., [ECF No. 40] at 1. After holding an evidentiary hearing, the Court denied the Motion for Preliminary Injunction, finding the special event plan for 2025 Art Basel to be content neutral, to be narrowly tailored in furtherance of a significant government interest, and to leave open ample alternatives for communication. *See generally* Order Denying Mot. for Prelim. Inj., [ECF No. 69].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

Defendants seek to dismiss all of Plaintiff's claims in this action.  *See generally* Mot. Specifically, Defendants assert that the Complaint is an impermissible shotgun pleading; that Plaintiff lacks standing to challenge the Ordinance and that its claims challenging the Ordinance are not ripe; and that Plaintiff's causes of action fail as a matter of law.  Defendants also maintain that the claims against Mayor Meiner and Commissioner Suarez in their individual capacities should be dismissed with prejudice because these officials are protected by legislative immunity.

The Court first considers the threshold question of whether Plaintiff has standing. Finding that it does, the Court nevertheless concludes that the Complaint is a shotgun pleading and fails to state a claim on which relief can be granted.

## I.   Plaintiff has Standing to Bring this Action

The Court begins with Defendants' attack on Plaintiff's standing, because "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (internal quotations and citations omitted). Thus, "[i]n the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Id*.

Article III of the Constitution limits the jurisdiction of federal courts to the adjudication of "Cases" and "Controversies" only. U.S. Const Art. III § 2; *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). This case-or-controversy clause requires that plaintiffs "must establish that they have standing to sue" in federal court. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish the individual standing prerequisites, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)). An injury-in-fact exists if a plaintiff has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).   To establish associational standing under the first prong, "an organization must 'make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm.'"  *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

Defendants' Motion focuses on the first prerequisite to Article III standing: the injury-in-fact requirement.  Defendants assert that Plaintiff cannot establish that any of its members has suffered a purported injury-in-fact by the Ordinance's enactment, nor can Plaintiff "conjure standing by showing a sufficient threat of future injury."  Mot. at 13.  Defendants additionally, or in the alternative, assert that Plaintiff's claims challenging the Ordinance are not ripe for the same reasons.  *Id*. at 14–15.

In support of their argument that Plaintiff has not suffered an injury-in-fact, Defendants highlight that no members have been "actually cited under the Ordinance"; specifically, at Art Basel 2023 and at the 2024 Climate Conference protest, the Ordinance had not yet been enacted, and Plaintiff does not allege that the Ordinance was applied to any JVP members at the 2024 Art Basel protest.  Mot. at 13.  While this may be true, Plaintiff does allege that on April 3, 2024, at the Commission Meeting after the enactment of the Ordinance, a group of JVP members gathered on the sidewalk in front of the Convention Center and was ordered to move.  Compl. ¶¶ 66–71. While these members were not specifically cited under the Ordinance, Plaintiff *does* plead that they complied "[i]n order to avoid arrest" and that the "City's Police [] enforce[ed] the Anti-Protest Resolution and Ordinance against those demonstrating in support of Palestinian rights and in

critique of Israel." Compl. ¶ 66; *see also LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 947 (11th Cir. 2022) (discussing how in *Steffel v. Thompson*, 415 U.S. 452, 455–456 (1974), standing was found where "a plaintiff was warned to stop hand-billing and threatened with prosecution by the state if he disobeyed.") Accordingly, drawing inferences in the light most favorable to Plaintiff from the facts alleged, *see Chaparro*, 693 F.3d at 1337, and given the Eleventh Circuit's directive to "apply the injury-in-fact requirement most loosely where First Amendment rights are involved," *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010), the Court is persuaded that at least one JVP member has suffered an injury-in-fact sufficient to establish organizational standing.

Further, even if the Ordinance has not been enforced against Plaintiff, the threat of future injury is sufficiently imminent to permit pre-enforcement review. "A threat of future injury is sufficient to establish standing when 'the threatened injury is certainly impending or there is a substantial risk that the harm will occur.'" *Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 887 (11th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The Eleventh Circuit applies a two-part test to determine whether such an injury is sufficiently imminent: (1) "the plaintiff must have an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute"; and (2) "there must exist a credible threat of prosecution." *Id*. (cleaned up)

Here, Plaintiff alleges that its members "wish to continue protesting Israel's actions and policies in public places in Miami Beach, including in front of the Convention Center[.]" Compl. ¶ 87; *see Dream Defs.*, 57 F.4th at 887 (concluding that "the plaintiffs' members face an injury that is sufficiently imminent for standing purposes [in part because] the plaintiffs' members wish to exercise their right to protest, speech that is affected with a First Amendment interest, and believe that [the law] prevents them from doing so."). Defendants counter that "such

generalizations are too abstract to support standing[,]" *see* Resp. at 14, but the cases to which Defendants cite are factually distinct. In *Elend v. Basham*, the Court found plaintiffs' allegations that they "fully intend to peacefully express their viewpoints in the future" too vague to establish a future threat of injury because "the complaint contained no further explication of the time, location, audience, or nature of protest activity contemplated." 471 F.3d 1199, 1204 (11th Cir. 2006). And in *LaCroix v. Lee Cnty., Fla.*, plaintiff "failed to provide the location of his future free speech activity with the requisite specificity to demonstrate a substantial likelihood of future injury." 819 F. App'x 839, 843 (11th Cir. 2020).

In contrast to these cases, Plaintiff has "allege[d] with particularity the location at which [it] would likely incur a future injury." *Id.* Plaintiff seeks to protest at the Convention Center, *see* Compl. ¶ 87, an assertion that is only bolstered by Plaintiff's Motion for Preliminary Injunction, which Plaintiff filed "to secure its First Amendment right to protest peacefully on the public sidewalk outside the Miami Beach Convention Center during 2025 Art Basel." *See generally*, Mot. for Prelim. Inj., [ECF No. 40].

Finally, Plaintiff satisfies the "credible threat of prosecution" prong of the two-part test to establish standing. *Dream Defs.*, 57 F.4th at 887. Plaintiff has been threatened with arrest "for engaging in the very behavior [it] intends to repeat" in front of the Convention Center. *LaCroix*, 38 F.4th at 947. Plaintiff has therefore alleged a credible threat of enforcement.

Having found that Plaintiff has suffered or will imminently suffer an injury-in-fact, the Court finds that Plaintiff has Article III standing to bring this action.[2]

---

[2] Defendants assert that because "Plaintiff's claims are not ripe for review for the same reason" it lacks standing, *see* Resp. at 15, and that Plaintiff's "claims are not ripe because the Ordinance has not been enforced against any of its members." Reply at 2. But for the same reasons stated herein, the Court rejects Defendants' argument that Plaintiff's claims are not ripe.

## II.  The Complaint is a Shotgun Pleading

Defendants maintain that the Complaint is a "quintessential shotgun pleading, in that (1) each count fails to incorporate or identify in the specific count the factual allegations that support the claims; (2) each count fails to adequately identify the specific kind of First Amendment violation being alleged; (3) it fails to specify which counts are brought against which Defendants; and (4) it fails to include a prayer for relief at the end of each count and instead contains one final prayer for relief at the end of the Complaint." Mot. at 9–10.  Plaintiff counters that the "Complaint describes in detail the 'grounds' for Plaintiff's claim [and] . . . then alleges four First Amendment claims that arise from Defendants' actions, thereby giving the Defendants 'adequate notice of the claims against them and the grounds upon which each claim rests.'" Resp. at 6 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).  The Court disagrees, finding Plaintiff's Complaint to be shotgun in nature.

The Eleventh Circuit has explained that "[t]he essence of a shotgun pleading is 'that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Vujin v. Galbut*, 836 F. App'x 809, 814 (11th Cir. 2020) (quoting *Anderson v. District Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).  There are four types of pleadings that produce this problem: (1) "complaints that contain 'multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint'"; (2) "complaints that are 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'"; (3) "complaints that do not separate 'each cause of action or claim for relief' into separate counts"; and (4) "complaints that 'assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or

omissions, or which of the defendants the claim is brought against.'" *Id*. at 815 (quoting *Weiland*, 792 F.3d at 1321-23).

Here, the Court finds multiple defects within Plaintiff's Complaint. *First*, Defendants reproach the Complaint for its "fail[ure] to incorporate any of its factual allegations into the specific counts of the Complaint, leaving Defendants guessing as to which of the 87 paragraphs of factual allegations are intended to support which of Plaintiff's four claims." Mot. at 10. Defendants are correct. The Court's independent review of Plaintiff's Complaint indicates that it suffers from the same defect as the one at issue in *Wagner v. First Horizon Pharm. Corp.*, where "[t]he central problem [with the complaint was] that the factual particularity of the first 175 paragraphs [was] not connected to the otherwise generally pled claim in any meaningful way." 464 F.3d 1273, 1279 (11th Cir. 2006). Similarly, in *Embree v. Wyndham Worldwide Corp.*, the Eleventh Circuit affirmed the District Court's dismissal of the complaint as a shotgun pleading on the ground that Plaintiff had failed to "clearly delineate which factual allegations [were] relevant to each claim." 779 F. App'x 658, 660–663 (11th Cir. 2019) (finding it to be "more than a 'technical deficiency'" in a complaint where "most of the counts . . . made conclusory and convoluted allegations against certain subsets of the defendants, all the while referring to the same general factual allegations[.]").

Plaintiff likewise has "failed to restate any pertinent facts relating to the individual counts or otherwise incorporate any of the preceding general allegations[.]" *Id*. at 663. For example, in the first cause of action, after citing two cases, Plaintiff merely states that "the Ordinance grants the police authority in violation of the First Amendment" because it "does not require the police to determine that there exists an interest that is sufficiently significant to warrant imposing such a limitation before requiring protesters to move from the sidewalk[.]" Compl. ¶ 89. Notably, Plaintiff does not state any facts relevant to its claim that the Ordinance is overbroad, leaving "a

reader of the complaint [to] speculate as to which factual allegations pertain to which count." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997). And in the fourth cause of action, Plaintiff alleges "[t]he comments of Defendant [Mayor] Meiner and Defendant [Commissioner] Suarez before and after passage of the Ordinance demonstrate unequivocal hostility towards the ideas expressed by members of [JVP]." Compl. ¶ 92. But Plaintiff does not clarify which statements demonstrate such hostility or make any attempt to cross reference the prior factual allegations.

*Second*, Plaintiff's Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. A complaint falls into this category of shotgun pleadings where it contains in its facts section "scattered legal arguments, legal standards, legal conclusions, and even [] citations to legal authorities[] [which are] then incorporated . . . into [the] various causes of action." *Arrington v. Green*, 757 F. App'x 796, 797–798 (11th Cir. 2018).

Here, Plaintiff's factual discussion of the Ordinance is riddled with legal conclusions and legal arguments. It states that "[t]he Ordinance is unconstitutionally overbroad[,]" that "[a] person's right to use public sidewalks for such purposes may not be abridged on the plea that it may be exercised in some other place[,]" and that "the Ordinance is unconstitutionally vague[,]" citing to numerous legal authorities throughout the Complaint. Compl. ¶¶ 42–45 (citations and internal quotations omitted). Further, a significant portion of the factual discussion is devoted to the Resolution, including its adoption, text, and enforcement. *See* Compl. ¶¶ 46–49, 53, 62–63. But none of the causes of action actually reference the Resolution, thus rendering it "not obviously connected to any particular cause of action[,]" *Weiland*, 792 F.3d at 1322—thereby requiring Defendants to infer which causes of action the Resolution may plausibly relate to.

*Next*, Defendants contend that Plaintiff both fails to "specify which claims are asserted against which of the three Defendants" and fails to indicate "whether the specific claims are asserted against the individual defendants in their individual or official capacities." Mot. at 11. Plaintiff responds that it is "self-evident" that the first three causes of action are "asserted against the Defendant City of Miami Beach . . . [and that] the fourth cause of action names Defendants Meiner and Suarez explicitly." Resp. at 9. The Court, however, agrees with Defendants that they "should [] not [be] required to rely upon Plaintiff's unpled assurances." Reply at 4.

A pleading is shotgun in nature where it "assert[s] multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1324. And a complaint falls into this category where it "fails to provide notice of what claims each defendant must defend against." *Tran v. City of Holmes Beach*, 817 F. App'x 911, 914 (11th Cir. 2020). Here, "[n]one of the counts specify that the claims (if any) in them are against any of the officials named or referred to in the 'parties section.'" *Id*. Even if Plaintiff is correct that it is "self-evident" which claims are asserted against which Defendants, *see* Resp. at 9, "[the] parties as well as the Court are [still] left to guess what they might be." *Tran*, 817 F. App'x at 914. And the third cause of action refers to Defendants collectively, when it states that "Defendants violated Plaintiff's First Amendment rights . . . ." *See* Compl. ¶ 91. But Plaintiff has "not provided sufficient notice of which defendants are claimed to be responsible for which acts and omissions [where it] refer[s] to defendants collectively." *Tran*, 817 F. App'x at 914.

Further, because "Plaintiff does not specify [in his claims] whether he is suing [Defendants] in their official or individual capacities . . . they do not know whether they might be personally liable for any [] judgment rendered against them or not[.]" *Boe v. Garcia*, No. 24-10057, 2024 WL 3861058, at *6 (S.D. Fla. Aug. 16, 2024), *report and recommendation adopted*, No. 24-CV-

10057, 2024 WL 4006165 (S.D. Fla. Aug. 30, 2024).  Though Plaintiff contends that "long-settled § 1983 doctrine makes clear that claims for damages against individuals is always in their individual capacity, and claims for injunctive relief, in their official capacity[,]" it is not for the Court or Defendants to read such "long-settled [] doctrine" into the Complaint.  Resp. at 9.  To do so would impermissibly "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–1169 (11th Cir. 2014).

*Finally*, Defendants maintain that "the Complaint improperly fails to include a prayer for relief at the end of each count and instead contains one final prayer for relief at the end of the Complaint[,] [leaving] Defendants guessing as to which form of relief is being requested in, and/or is tethered to, which cause of action."  Mot. at 12.  Plaintiff maintains that it has complied with Rule 8(a)(3) and has "properly described the relief sought at the end of the Complaint, immediately after alleging the claims upon which relief should be granted."  Resp. at 9.  The Court, however, finds that Plaintiff has failed to "clearly articulate the relief requested" as to each specific cause of action.  *Ely v. Mobile Cnty. Sch. Bd.*, No. CV 15-566-KD-M, 2016 WL 3188926, at \*8 (S.D. Ala. May 11, 2016), *report and recommendation adopted sub nom. Ely v. Bd. of Sch. Commissioners of Mobile Cnty., Alabama*, No. CV 15-0566-KD-M, 2016 WL 3189244 (S.D. Ala. June 7, 2016).  Given this deficiency, it is consequently "unclear which causes of action seek damages and which causes of action seek equitable relief."  *Mika v. Rollins Coll.*, No. 6:25-CV-1110-JSS-RMN, 2026 WL 679128, at \*4 (M.D. Fla. Mar. 11, 2026) (finding a complaint's failure to articulate the relief requested in each cause of action to be "impermissible"); *see also Al-Rayes v. Willingham*, No. 3:15-CV-107-J-34JBT, 2016 WL 6080826, at \*4 (M.D. Fla. Aug. 15, 2016), *report and recommendation adopted*, No. 3:15-CV-107-J-34JBT, 2016 WL 6071636 (M.D. Fla. Oct. 17, 2016) ("[T]he [complaint] improperly fails to tie the relief sought . . . to specific counts and defendants.").

In sum, Plaintiff's Complaint is a shotgun pleading. The Court is troubled by the inferences Plaintiff asks the Court to make in order to find that the Complaint gives Defendants adequate notice of the claims asserted against them. Indeed, "[f]ostering [such] guesswork is not a goal of pleading, and requiring it violates not only Rule 8 but also Rule 10(b)." *Tran*, 817 F. App'x at 914. Accordingly, Plaintiff is afforded one opportunity to amend its Complaint. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018*)* ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").

### III.   Plaintiff has Failed to Properly Plead its Causes of Action

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Defendants contend that "the four counts do not specify the precise First Amendment claims being asserted and whether they are facial or as applied claims [and that] the Complaint does not even attempt to plead the elements of any such claims." Mot. at 2. The Court agrees, finding that each claim fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

*First*, Plaintiff has failed to state a claim that the Ordinance is facially unconstitutional and substantially overbroad. "A party may challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker[.]" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1269 (11th Cir. 2011) (quoting *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129 (1992)). In *Catron*, the Eleventh Circuit found that "Plaintiffs [had] stated no claim for the extraordinarily rare overbreadth invalidation" they sought where they "contend[ed]

the trespass ordinance [was] overbroad in the discretion it [gave] city employees to issue trespass warnings . . . [but] allege[d] no facts to support this attack-on-expression argument[.]"  658 F.3d at 1269–70.  Plaintiff here has similarly stated that "the Ordinance does not require the police to determine that there exists an interest that is sufficiently significant . . . before requiring protesters to move from the sidewalk[.]"  Compl. ¶ 89.  And Plaintiff has likewise alleged no facts that could "plausibly suggest an '*impermissible* risk of suppression of ideas' in '*every* application' of the ordinance."  *Catron*, 658 F.3d at 1270 (quoting *Forsyth Cnty.*, 505 U.S. at 129).  Accordingly, Plaintiff has failed to state a claim that the Ordinance is unconstitutionally overbroad.

*Second*, Plaintiff's challenge to the Ordinance for vagueness is also deficient.  Plaintiff alleges that the terms of the Ordinance "permit arbitrary and discriminatory enforcement" because they "empower[] a police officer to determine when a person standing on a sidewalk 'intentionally block[s] or impair[s] passage or movement by another person[.]'"  Compl. ¶ 90.  "In bringing a facial challenge to an ordinance for vagueness, a party who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Catron*, 658 F.3d at 1271 (internal quotations and citations omitted).  Thus, to determine whether Plaintiff's own conduct is clearly proscribed by the terms of the Ordinance, "[the Court] must determine whether the terms [of the ordinance] are vague *as applied to Plaintiffs' circumstances*."  *Id*. (emphasis added).

Here, though Plaintiff points to a specific term of the Ordinance that it maintains is overbroad, it does not connect this term to Plaintiff's specific circumstances, thus precluding Plaintiff's ability to state a claim.  Relatedly, the claim fails to allege facts to allow "the Court [to] reasonably infer that the Ordinance is unconstitutionally vague in the ways [that Plaintiff] contends."  *Fla. Action Comm., Inc. v. Seminole Cnty.*, 212 F. Supp. 3d 1213, 1225 (M.D. Fla. 2016); *see also Henderson v. McMurray*, 987 F.3d 997, 1005 (11th Cir. 2021) (discussing how

plaintiffs "fail to explain why the [ordinance's] alleged chilling effect on their speech renders it unconstitutionally vague.")

*Next*, the third cause of action alleges that "Defendants violated Plaintiff's First Amendment rights when Miami Beach police officers denied Plaintiff's members access to the Convention Center's sidewalks[.]" Compl. ¶ 91. Here, unlike in *Amnesty Int'l, USA v. Battle*, Plaintiff has not alleged facts sufficient to put Defendants on notice as to "which of their actions allegedly violated [Plaintiff's] rights" and has not "provide[d] enough information for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." 559 F.3d 1170, 1180 (11th Cir. 2009). Indeed, Plaintiff does not say when or how Defendants violated Plaintiff's First Amendment rights. Nor does Plaintiff allege that it was unable to communicate its message or handout leaflets from the special protest zone. *See id.* (noting that the "complaint makes clear" that plaintiff's First Amendment rights were violated because it was "unable to have a successful protest rally and unable to pass out Amnesty literature as a result of Defendants' creation of a police cordon."). "At base, [the third cause of action] contains a legal conclusion—a violation of First Amendment rights—with no factual allegations concerning what that violation was or how the Defendants caused those unspecified violations." *Stolpmann v. Lentz*, No. 618CV293ORL37DCI, 2018 WL 4376409, at *5 (M.D. Fla. Aug. 22, 2018), *report and recommendation adopted*, No. 618CV293ORL37DCI, 2018 WL 4539623 (M.D. Fla. Sept. 21, 2018) (finding that plaintiff failed to state a First Amendment claim).

*Finally*, Plaintiff fails to adequately plead its fourth cause of action, because it is unclear whether Plaintiff is challenging the enforcement of the Ordinance, as the cause of action suggests, or "the Ordinance itself" as well. *See* Compl. ¶ 92. Specifically, the cause of action states that the "Ordinance has been enforced against Plaintiff because of Defendants' hostility to Plaintiff's views

about Israel[,]" but Plaintiff thereafter pleads that "[t]he Ordinance itself, *and* the actions of Miami Beach police officers in enforcing it" are a product of Mayor Meiner and Commissioner Suarez's hostility towards the ideas expressed by JVP's members.  Compl. ¶ 92 (emphasis added).

The Court therefore agrees with Defendants that "this count fails to make clear the government action challenged or the cause of action asserted[.]"  *See* Mot. at 20.  "The result is confusion both for the Defendants in trying to frame a responsive pleading and for the undersigned in trying to determine the scope of Plaintiff's claims."  *Rodriguez v. Daniels*, No. 6:21-CV-1739-PGB-EJK, 2022 WL 22234574, at *4 (M.D. Fla. Apr. 1, 2022), *report and recommendation adopted*, No. 6:21-CV-1739-PGB-EJK, 2022 WL 22234577 (M.D. Fla. Aug. 3, 2022).  And Plaintiff's inclusion of a singular brief paragraph supporting this fourth cause of action, *see* Compl. ¶ 92, is simply insufficient for the Court to infer that Defendants' hostility towards Plaintiff's viewpoint led to their refusal to allow Plaintiff to protest at the Convention Center.  Resp. at 18.

*          *          *

For the reasons explained herein, Plaintiff has failed to adequately plead its causes of action.  At most, they are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" under Rule 12(b)(6).  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  The Court further advises that the deficiencies addressed herein, both with respect to the shotgun nature of the Complaint and pleading sufficiency, are non-exhaustive.  The onus is ultimately on Plaintiff to correct its deficient pleading.  *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1352 (11th Cir. 2018) (affirming dismissal after counsel was given an opportunity to file an amended complaint but "made no effort to correct its deficiencies, [] choosing to stand on his deficient pleading.").

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Joint Motion to Dismiss Complaint, [ECF No. 30], is **GRANTED IN PART**.[3]

2.  Plaintiff's Complaint, [ECF No. 1], is **DISMISSED** *without prejudice and with leave to refile*.  Plaintiff is directed to file a First Amended Complaint consistent with this Order by **June 19, 2026**.

3.  Failure to timely file a First Amended Complaint shall result in the **dismissal** of this case without further notice.  *See* FED. R. CIV. P. 41(b).

**DONE AND ORDERED** in Miami, Florida, this 26th day of May, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[3]  Given that the Court is granting Plaintiff leave to amend its Complaint, the Court finds it premature to consider Defendants' argument that the claims against Mayor Meiner and Commissioner Suarez in their individual capacities should be dismissed with prejudice due to legislative immunity.  Mot. at 22–25.